May it please the Court, my name is Megan Brewer and I represent Petitioner Hernandez Flores. I would like to reserve five minutes of my time for rebuttal. For 30 years, Petitioner was a lawful permanent resident under a legalization program for special agricultural workers known as SAW, which, as stated in the BIA's decision in matter of Jimenez Lopez, is unique under the immigration laws. The SAW program existed in the late 1980s to early 1990s and is no longer active. The most important precedent decisions in this case... Excuse me, counsel, help me on something here. Yes, Your Honor. As I understand it, when he was admitted, he actually was inadmissible because of his prior offense. It's just that the government didn't know it, maybe because he used an alias. Is that correct so far? Your Honor, he is charged as having been inadmissible at the time of his adjustment of status to lawful temporary resident under 8 U.S.C. section 1227A1A. And that is the charge that was sustained by the immigration judge. And the basis for the charge of inadmissibility is having had a conviction for a controlled substance offense. And that was sustained by the immigration judge. That would make him inadmissible, is that correct? That is the ground of inadmissibility, correct. But you don't dispute, I take it, aside from the temporal problems of this case, that that conviction would make somebody inadmissible. Initially we did, but I think that argument is now foreclosed by this court's decision in Martinez-Lopez regarding inadmissibility. You don't make that argument to us today. Yes, Your Honor. Is it true that under Barton, inadmissibility really is a term of art that doesn't have a whole lot to do with whether somebody was actually admitted? It can be. Generally, charges of inadmissibility are... I'm talking about this new Supreme Court decision. Barton, I think it's called. Right, so Barton deals with a different immigration benefit. In general, charges of deportability are charged against people who have been admitted or made an entry into the United States. While charges of inadmissibility are charged with those who have not made an entry into the United States or who are seeking admission. Now, the two statutes at issue in both Barton and in this case allowed inadmissibility as a criteria to be used to disqualify individuals who are not actually subject to removal based on grounds of inadmissibility. I think the most important cases for this court to consider are the BIA's decision in Matter of Juarez and this court's en banc decision in Perez Enriquez v. Gonzalez. These cases mandate that a SAW temporary resident who has adjusted status to permanent residency can only be charged under grounds of deportability, not inadmissibility. And the immigration judge and BIA have no authority to redetermine eligibility for temporary resident status. So, when there's a charge under 1227A1A, what that charge is really asking the immigration judge to do is to redetermine the person's eligibility for SAW status. And that is prohibited under the SAW statute at section 1160E and under Matter of Juarez. Petitioner cannot be charged with removability under 8 U.S.C. section 1227A1A for having been inadmissible at the time he adjusted to lawful temporary residency based on a conviction for a controlled substance offense. 1227A1A is charged as an inadmissible alien and cannot be charged against a special agricultural worker because the termination procedure is set forth at section 1160A-B2 where the exclusive means to strip a special agricultural worker's residency based on allegations of inadmissibility as an immigrant. Are they the exclusive means? There's an anti-fraud provision in the INA. It's section 1182A6C1. So, let's just assume this set of facts because then I want to ask you about the facts in this case. Let's assume that after your client automatically adjusted to LPR status under the timetable, the AG discovered for the first time that he'd obtained his temporary status by failing to disclose convictions that would have made him ineligible. Could his status then be revoked? So, a charge under section 1182 would definitely not be proper because he has been admitted and so he can't be charged with inadmissibility. I don't understand that. 1182 says that 1182 talks about all kinds of decisions that can be revoked including temporary status. Right, but permanent residents are not subject to removal under section 1182 unless they fall under an exception to section 1101-13C and they're seeking admission. Generally, they're not subject to charges of inadmissibility. So, your position is that if someone obtains legal permanent residency through fraud that they cannot be removed? Actually, the charge that the government charged in this case was... I'm not asking what they charged. I know they didn't raise that in this case. I'm trying to figure out... They did, Your Honor. They also charged him under 1227-A1A with an underlying basis that he was inadmissible at the time of adjustment to temporary residency based on fraud. And that was not sustained by the immigration judge basically because the government was unable to sustain the charge because they're not able to use... I want to get back to your case in a second. I'm just trying to ask now. You do agree that someone who obtains permanent residency through fraud can be removed because of that fraud, yes? Under SAW, I don't think so because SAW is a very special statute that provided for termination... That sounds funny to me. As I recall, most of the Nazi war criminals who were deported decades after they got in were deported on the basis of fraud when they came in. Generally, someone's permanent residency can be taken away if they obtain it through fraud. SAW is a different, very special statute. Oh, you're saying... Sorry, go ahead. No, I... Go ahead. I want to establish the general principle, then I want to move back to SAW for a second because I'm trying to figure out where you see in SAW the ability, the statement by Congress that it meant to accept people who got in under SAW even from the general fraud statute. Absolutely. Where is that? In the general case, permanent residency can be taken away based on fraud. Now, if you look at the SAW, basically there's two important things about SAW, how it's granted and how it's taken away, and both of these show Congress' intent. In the way SAW was granted, there was a two-step process. First, they had to be granted temporary residency, and they had to apply for that and be granted, and then on a fixed schedule set forth in the statute, those people were automatically granted permanent residency. This is the only immigration process where permanent residency was granted automatically, and I think the fact that residency was granted automatically without the need for any further application demonstrates that Congress was aware and intended that some people would become permanent residents even if they didn't meet the criteria. This is where I'm having some trouble. Go ahead, Judge Kleinfeld. Let me take you a little past the LPR status, the green card status. When I look at 1227A1A, it says any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time, and I think this fellow was, is deportable, and it doesn't say unless he's an LPR. If he has a green card, it's harder to deport him because the government bears the burden of proof, and it has to prove the basis for deportation by clear and convincing evidence, but he's still deportable, and there's no exclusion of SAW in 1227A1A. I understand that you think that Congress meant to exclude SAW, but I can't find words to that effect in the SAW statute. What is that, 1160, was it? Yeah, 1160, and I can't find words to that effect in the more general deportability statute. Why do you think we, what would the reason be for making SAW such a safe haven? So, the policy reasons behind it were based on the need for agricultural workers to support the U.S. economy and food supply. Listen to my question here. It looks to me as though you have no words in the text to support your argument that he's not deportable. The best you have is that he's got legal permanent residence status, but that doesn't protect him against deportation. It just affects the burden of proof. Since you have no words in the text, I would like to know why you think we should read them in. Your Honor, section 1227A1A is a general statute, and that applies to everyone, all permanent residents. Exactly. SAW is an exception. If you look at section 1160E, this is where administrative and judicial review is set forth, and it says that there shall be no administrative or judicial review of a determination regarding a SAW application other than as set forth here. And it instructs the Attorney General to set up the administrative review procedures. Which subsection did you say I should look at? 1160E. Thank you. In this case, what the Attorney General set up was that all appeals regarding the granting of temporary residency under SAW, granting or the denial, had to go to the Legalization Appeals Unit. The immigration judge and the BIA have no jurisdiction, no authority to determine whether somebody is eligible for SAW temporary residency. And that's why this statute is more specific. It's an exception to the authority under 1227A1A. I'm with you so far. I'm with you so far that for purposes of the Special Agricultural Workers Statute, judicial review is very limited and permanent residence status is automatic. And I'm with you on what the purpose was. It was so that the farmers could keep their workers without La Migra coming in all the time and taking them away. But I don't see where the implied exclusion is that makes 1160 a safe haven. Because what does the immigration judge do when the person is charged under 1227A1A? The immigration judge, and that person is a permanent resident, the immigration judge has to look and see, were you actually eligible for your permanent residency when it was granted? That's the inquiry that the immigration judge has to do. And in the case of a SAW temporary resident, the immigration judge has no authority to adjudicate eligibility for SAW temporary residency. Ms. Burke, can I ask you, would the government, under the confidentiality provisions of SAW, could the government have put before the IJ or the BIA or this court the SAW application? No, they could not, and I believe that's why they did not try to do that in this case, and that's why that charge was not sustained, the fraud charge. But you say it wasn't sustained. Where do I find that in the immigration judge's decision? I don't see him, I don't see the immigration judge saying the charge is not sustained. I just see the immigration judge basing the removal on two charges. Am I wrong about that? He held the ruling in abeyance because it wasn't necessary for his order of removal. Yes, that's what I understood. Okay. So here's my question. Let's assume, just for purposes of discussion, that your client applied for the SAW temporary status and lied on his application where it asked, have you ever been convicted of a felony, or whatever it asks, or failed to disclose these two convictions. And they wanted to deport him under the fraud statute for that reason. How would they prove it if the application is confidential? So during the period of lawful temporary residency, the former I.M.S. I'm not talking about that period. Let's assume that your client successfully hid from the government for the period that it takes to become an LPR the fact that he was convicted under an alias of two different crimes. And the government now said, well, he got LPR status. And I agree with counsel's reading. We can't go back and say he was inadmissible at the time, but he's committed a fraud and we would like to deport him. How would they prove it? Your Honor, they're precluded from doing so. Under 1160G, once a SAW temporary resident is adjusted to permanent residency, they must be treated as a person lawfully admitted to permanent residency for all purposes. So that strikes me as incredible. We know that if people become citizens based on a fraudulent application, although through a different process, you may have to go to district court, the government can revoke their citizenship. You're saying if you become a lawful permanent resident based on a fraudulent application and the government doesn't discover it until after you've been granted LPR status, the government's completely out of luck? That's right. Really? Yes. Does that make any sense at all? Yes. If you look at Perez Enriquez, he was not eligible for permanent resident status at the time of his automatic adjustment to permanent resident status. And that was Congress's intent. That's why they made the adjustment automatic and it's why they made the termination procedures discretionary. Because they intended that some people who were not statutorily eligible would become permanent residents. And just like as in Perez Enriquez, the person can only be charged under grounds of deportability, not grounds of inadmissibility or any grounds alleging that they are not eligible or were not eligible for statutory residency. And I see that my time is up, so I would like to reserve it. Yeah. And I want to make sure everybody has a chance to ask questions. We'll give you some time for rebuttal. We've taken you to the end of your time. But Judge Kleinfeld, I think, has a question. You're muted, Judge Kleinfeld. Judge Kleinfeld. As I understand your argument, you're taking it to the point where if a Nazi war criminal had committed fraud on his application, basically by failing to reveal that, so long as he came into the United States and worked in the fields for a while as an agricultural worker under SAW, he'd be home free despite the fraud. That's correct, Your Honor. As long as he did not engage in any other deportable conduct after having become a permanent resident. If he did so, then the government would be free to charge him with charges of deportability. But if he had committed deportable, if in addition of being a Nazi war criminal, he had also sold some methamphetamine after he came in, he'd still be home free. As long as that happened before he became a temporary resident. And if he continued to commit deportable acts after having become a permanent resident, then he would be subject to grounds of deportability. Okay, I guess I know the extent of the argument then. Thank you. I have one other question, just so that I'm clear, now that we know what the immigration judge actually did with the fraud charges. If we were to hold in your favor on the question of whether or not your client could be deported as inadmissible, given the fact that he'd gotten LPR status, we would still have to remand to the BIA to address the fraud issue, would we not? Your Honor, I don't think so, because our argument is that the fraud charges also precluded under the termination statute. Yeah, but that's not, the problem is we can only review what the BIA actually held. And all they held as to the fraud charge was we're going to hold it in abeyance. So I don't think we can issue a preemptive ruling that no matter how they rule on it in the future, it would come out in your favor. So I think we'd have to send it back to them to address that charge, even if we bought the rest of your argument. But think about that, and we can maybe address it when, we'll give you a few minutes for rebuttal at the end of this. Okay, thank you. Counsel, for the government. May it please the court, my name is Jeffrey Hall, and I'm arguing on behalf of a respondent. The only question in this case is whether the special procedures for granting a special agricultural worker a lawful status somehow displace the entirety of immigration law concerning the deportability of immigrants. And they certainly don't. As we have already heard in this case, and in this argument today, there are no factual disputes here. It's undisputed that the petitioner was convicted in 1986 of two counts of trafficking and possession of heroin and cocaine. And that he applied for a lawful temporary status under the Sol Program, which he got in 1990, and that automatically converted to an LPR status in 1992. Excuse me, Counsel, could you speak to that 1160E argument that Petitioner's Counsel made? Yes, Your Honor, I'm happy to. So, under the statute, the E portion of that, a couple things, most important of which, and this wasn't briefed in the briefs, Your Honor. The briefing certainly doesn't fully develop it, but the determination that was discussed before, that determination is the determination made under this statute. So under the special provisions, which concerned whether or not the petitioner would be, or an applicant for the SAW program would be granted the temporary status, and whether or not that would be revoked under the procedures, under 1160A, before it converted to a lawful permanent status. But as the statute itself makes clear in 1160A, deportability is an entirely separate question. It's not meant to displace it, and both the BIA has held that explicitly, and it's been presumed in the Ninth Circuit cases cited by Petitioner. Could you help me on the question that I asked Petitioner's Counsel on 1227A? Does it really matter, other than to the burden of proof and what the government has to prove, whether the petitioner has green card status or not? Your Honor, that is the primary effect. So the SAW provision, the Special Agricultural Workers Statute says that you can either go under deportability, which would be 1227, or if they're still having this temporary status, you could go under its provisions. And those special procedures were for, obviously, the limited time period before they adjust to lawful permanent status. But you're right, they give fewer procedural protections. So instead of adhering under 1227, where you can, for instance, What I'm trying to find out is, if you assume that he's locked down his legal, permanent legal status as a special agricultural worker, can he still be deported under 1227A? Is there any reason why he couldn't be? Is there any reason why his legal permanent residence status has to be questioned? No, Your Honor. Does fraud even matter? So, Your Honor, he certainly may be deported, as any LPR may be deported, under 1227 for deportability. And you're right, if he is an LPR, he is granted certain additional procedural protections, rather than if he were not an LPR. Would he still be deportable because of his pre-permanent status crime? Yes, Your Honor. He would be deportable under 1227A for, at the time he initially applied for his lawful temporary status, he was actually inadmissible. Would that be the text here in 1227A1A, inadmissible by the law existing at such time? Yes, Your Honor. That would be the correct statement. Do you even need, I understand the fraud argument, but it looks like it's two arrows for the same bow. Do you need the fraud argument? So, Your Honor, no. And here, as was adduced before, the United States... So you could deport him for either of two things, either fraud in the application or the crime that he committed. Is that what you're saying? Yes, Your Honor. In fact, in the unpublished decision in Castor that we cited in our brief, that's precisely what the court did. I don't care about the unpublished decision because it's not presidential authority. What I want to know is, in your reading of the text, there are two ways that he can be deported, and they're independent of each other. One is fraud in the application, and the other is the crime that rendered him inadmissible when he was admitted, and they're independent of each other, and either one is enough. Am I reading that right? Yes, Your Honor. The law clearly establishes that both those routes are sufficient to establish deportability. Here, when Petitioner applied for his temporary lawful status, it was clear by the statute itself that he was inadmissible, and it was not a ground that could be waived. So it doesn't really matter whether or not it was, in fact, fraud or some mistake on the part of INS when they took in his petition. He was clearly inadmissible. There was no way for them to waive that, and therefore he could never get temporary status. Well, you had me until there was no way for them to waive that. So as I understand it from our case law, the Attorney General's ability to say, I'm not going to grant you LPR status even though you're on temporary status, is discretionary, correct? Your Honor, within the statute, there are certain grounds that cannot be waived. Okay, that's not what I'm asking you. Just listen to the question I'm asking you. Isn't the Attorney General's ability not to promote you, in effect, to LPR status, for whatever reason, discretionary? Your Honor, under the statute, it established automatic promotion to LPR status, so it was not discretionary in the sense that they could just decide to pull it for any reason. There were certain procedural protections built in such that if granted the lawful temporary status, they could revoke it for certain reasons. I'm sorry. So let me—I want to explore—I've tried to explore with your friend the limits of her position. Let me explore the limits of yours. Let's assume that Mr. Hernandez, when he applied, put on his application, I was convicted in California State Court under an alias of two crimes. Here they are. And he was nonetheless granted temporary status. The time period lapsed. He automatically got LPR status. And the Attorney General, 30 years later, says, well, I made a mistake. I now want to revoke his LPR status because he was inadmissible at the time of admission. Is it your position that he has that authority? Yes, Your Honor. He has the authority to deport the petitioner because he never— there was never any statutory authority to give him any status to begin with, and the statute is very clear on that. A drug conviction was the type of conviction that could not be waived. And that is under 1160 itself. Mr. Hall, I asked your opposing counsel the same question. Could the government have brought forward in this case, in this proceeding, the SAW application? Your Honor— That would have told us one way or the other what was actually disclosed there? No, Your Honor. And it's precisely why I believe it's not there, or at least why I understand it would not be there. So there is case law within the BIA itself that I believe it's MASRI that sort of sets the limits and recognizes that the statute sets the limits on what the application can be used for. And that goes back to the—in fact, the e-provision that was discussed earlier. That determination is really the determination made on the applicant's application. And that's where the fraud has to be discovered. If it's discovered in that process, then it can be—that application can be used to convict the alien of a crime. But if it's discovered, you know, after the status converts to LPR status, they can't use that application if it wasn't discovered sort of through the application review process. Here, there isn't any evidence that it was discovered through the application review process. So the government is proceeding on the theory that he was simply inadmissible, and unwaveringly so, at the time he applied for his lawful temporary status. But you believe that actually the statute would preclude you from putting forward that SAW application to the IJ, to the BIA, to this court, to demonstrate one way or the other what was disclosed there? If it didn't—again, if it didn't come from the initial determination and sort of review of that application, but if we discovered fraud—if the government discovered fraud later on and said, we need to see that application to see if we can sort of corroborate our theory, that's correct. We wouldn't necessarily be able to put forward that application. And certainly, we haven't attempted to do so here for precisely that reason. Does that mean that you would not be in a position to prove fraud in the application? No, Your Honor. Did that grab us out? I would point you just to the factual circumstances of the Pastor case and not necessarily its legal reasoning. But I will say there, although it's an unpublished decision, they were able to conclude both inadmissibility and fraud there. And the petitioner in that case had used a false name. So if, for instance, one immigrant is given— Wait a minute. If we can't look at the application because it's confidential, how do we know he used a false name? Well, Your Honor, if he's claiming to have that status under that name and that's not his name, I think that would be a great way for the INS and now the DHS to establish that he committed fraud in the application. And we don't know the factual circumstances there, but certainly a petitioner can also admit to using a false name. So what you're saying is if he shows his green card and it has one name, and then you prove who he is and that's another name, that's enough. And that way you can show fraud as a ground to deport him without having to show the application. Your Honor, that would be one way to go about proving that. There are certainly other pieces of information. If somebody admitted to assisting him in filling out the application fraudulently, that would be extraneous evidence that's not in the application itself. And really it's only the application itself that's precluded from being used. I'm sorry, finish your answer. To the extent that you can, in law generally, if you can prove something through any other way than that, you can certainly prove fraud. So I believe there would be other avenues to prove fraud had that evidence been available. Does the record indicate in this case when the Attorney General learned of these convictions? Your Honor, it does not. So here's what concerns me about your position. It may be legally correct, I don't know. Somebody commits two offenses over 30 years ago, apparently does nothing else to make himself deportable over the next 30 years, and then you discover two old marijuana convictions or drug convictions, and you deport somebody. Is there no statute of limitations on this in the absence of fraud? I understand why if there's fraud and they've kept them from you, that's a separate matter. But the SAW statute seems to impose some obligation of due diligence on the Attorney General during the timetable period. But you're saying that once that timetable period goes by, the Attorney General can sit by forever, even if he knows of something, and then remove somebody later? Your Honor, certainly if something was discovered later, you're right, it can result in the deportation of an alien who, as in this case, has had his LPR status for a while. But here, as in every area of law involving the executive branch, there is a certain presumption of regularity that the Attorney General would not sit around on evidence like that? Well, look, you're not going to win based on the general trust of the Attorney General, at least not in front of me. What I'm asking is, you said before that if the Attorney General knew on the day he admitted him that he had these convictions, it wouldn't matter, he could wait 30 years and then remove him. And that's what's giving me trouble about your position. I'm not bothered at all by the notion that when one discovers fraud later, one acts. But is it really true that the statute says you can just sit on this, put it in a savings account, and use it 30 years later? Your Honor, I think that if Petitioner had evidence that that is what happened, that he provided sort of all the information he had, that would be circumstances that could be raised in a case. And it may be worth exploring other theories, but we certainly don't have that evidence here. That gets to my last question about the record, which is that I take it Petitioner never claimed in this case that he had provided this information. We don't have the application because it's confidential, but he never proffered any evidence that he had provided that information. Is that correct? Yes, Your Honor, I'm not aware of any evidence that he proffered or proffer of evidence that he provided this, and INS somehow just goofed in not realizing that it did render him inadmissible. Okay, I think I spoke over somebody else. Yeah, just a similar follow-up question. Could the Petitioner here seek any kind of relief from removal and try to package the argument that Judge Hurwitz is making? Whether or not that argument would be successful or not, is there essentially a forum or a mechanism by which he could advance it? Your Honor, there would be the potential for relief available. I don't know based on that theory. I do believe that the law is pretty clear that the Attorney General just did not have the authority to give him any status, and so it doesn't really matter. Certainly, if he had such a theory, the time to advance it was before it comes on this final review before the Ninth Circuit. He did advance a theory of relief from deportation, but that would require sort of getting post-conviction relief on his convictions within California. And as the record reflects, the immigration judge and the BIA didn't grant that relief because he hadn't shown that he had even attempted to act on that or to get post-conviction relief. So there were potentially avenues for him at earlier times in his litigation. Hold on, counsel. On that point, as I recall, his problem with seeking relief from removal, a lot of people can get relief from removal for an ancient crime. They show they've developed family connections and a regular work history, and they're good citizens in every way except they're not citizens, and they get relief from removal. But as I recall, Congress made an exception for a number of drug crimes and aggravated felonies so that they're not eligible for relief from removal. And that means that if you fall into one of those exceptional categories, you're just out of luck no matter how ancient the conviction is and no matter how long it's been since you did anything bad. Is that – have I got that concept right? Your Honor, you certainly do have the general concept right. I would have to go back and look at the old Section 212C to see whether or not he would fall within the potential for it and whether or not St. Cyr would affect it, just like as in Galagos-Vasquez. But, again, he hasn't advanced those arguments on appeal. The time to do that was earlier on, and he certainly had the opportunity to – I understand that's not for us. I'm just looking at the concerns that Judge Hurwitz has raised. It just does seem pretty harsh to deport somebody who's one of these cases that we see from time to time where they've been a good citizen in every way except they're not citizens, and it's been decades since their crime. Yes, Your Honor. But I will say that Congress specifically provided for that because he does have serious convictions, two of them for trafficking and possession of hard drugs. And Congress did not want those types of aliens to receive temporary or lawful permanent status. So it really is up to Congress to determine who to admit, and they've made the policy decision that, unfortunately, the type of immigrant that the petitioner is in this case is not the type that they would like admitted for temporary or lawful permanent status. Thank you. Thank you, counsel. We've taken you well over, so I'm going to give an additional four minutes to the petitioner for rebuttal. Thank you, Your Honor. Thank you. There's just a few things I'd like to address on rebuttal. First is that if this charge under 1227A1A is sustained, then petitioner is not eligible for any form of relief from removal. He's not eligible for 212C, which is the same issue in Perez Enriquez. If the charge is sustained under 1227A1A, then he is not found to be lawfully admitted to permanent residence status, and he's not eligible for 212C. Further, he's not eligible for cancellation of removal or a waiver under 1227A1H. There's no relief available. And, in fact, the government is actually arguing in this case that they could do for him. That's because of the nature of his drug crime? Because it's a controlled substance offense. It's not an aggravated felony because of the date of the conviction. But it has been found to be a controlled substance offense, and I think any argument that it's not is already foreclosed. And the government is, in fact, trying to argue that they can remove him 30 years later without any evidence that there was fraud. That is the charge that's at issue in this case. And petitioner would have no reason to put forth his own SAW application in a proceeding where that would be waiving very important confidentiality rights that he has when it's the government's burden to prove that he's subject to removal when he's already a permanent resident. Did he have the ability to even do that? I mean, could he have chosen to submit his SAW application, or is that not even a choice for him to make? He could have probably obtained it through the Freedom of Information Act request. In this particular case, I don't know if that would have been possible because the removal proceeding was actually shorter than how long it takes to receive a Freedom of Information Act request result. The other thing that I wanted to point out is just to read this quote from the BIA's decision in Maduro-Juarez, which is 20 INN Decision 340 at 345. Neither the immigration judge nor this board may make any determination regarding the alien's eligibility for temporary resident status or permanent resident status. And they cite Section 1160E of the Act and 8 CFR Sections 210.1 through 210.5. And as to Judge Horowitz, your question about remand, I think that the same applies to the fraud charge that the immigration judge cannot do anything that constitutes a determination of whether he was eligible for lawful temporary resident status. But if that's not clear, then I think under INS v. Ventura, the court should remand to the board for that to be decided in the first instance. Since your argument turns largely on 1160E1, is this an administrative or judicial review of a determination respecting an application for adjustment of status, or is it something else? In other words, this statute seemed to me to say, look, once you make this determination, we're not going to review why you made the determination, why you denied it or why you granted it. But isn't this different in the sense that he was never eligible for it? The AG never made a determination that he was eligible for it, probably because he didn't have the information in front of him. So is that statute really meant to address this situation? Your Honor, yes. The determination was the initial application for SAW temporary residency. And if the former INS wanted to terminate that temporary residency, they could have done so during the time he was a temporary resident. And I think that's supported by Judge Horowitz. I guess here, are they seeking a determination of whether or not he was appropriately granted temporary residency? Or are they seeking a determination about whether he was ever eligible? See, it's one thing to say we're not going to review the AG's decisions, but are we reviewing the AG's non-decisions also? Well, the AG really didn't make a decision here that notwithstanding his convictions, he was eligible. The AG just said on the face of the application, you appear to be eligible. What you're really attacking was his failure to bring another proceeding during that timetable period, aren't you? It's both, Your Honor. The decision on the application is a decision, and then the decision not to terminate temporary resident status is also a decision. And that's the end of the determination. There's no authority to review that. Well, that's, I guess, the question I was asking. Did the AG really make a determination not to terminate temporary resident status, or did the AG simply fail to act during that time period? Look, that's the whole point of the automatic grant of permanent residency, was that Congress didn't want the agency to spend the resources to be individually adjudicating all these applications because the need for agricultural workers was so high. That's why Congress made that decision that they would potentially allow people who were not eligible to achieve permanent resident status because it was worth it in terms of catching a lot of people within their net of applications and ensuring that they would achieve level permanent resident status. If they really wanted there to be an individualized determination on each application, then they could have required people to apply for permanent residency instead of granting it automatically. Try once more to educate me on this point that I've been having trouble understanding. It's pretty clear that 1160 makes it hard to interfere with the alien who comes in as a special agricultural worker getting permanent resident status. But all that is is a green card. People with green cards get deported all the time. They're deportable all the time. No problem. And I just don't see what words in 1160 mean this is some special kind of green card where you can never deport them no matter what. Your Honor, people who have green cards can be deported for many reasons if they engage in acts that make them deportable after admission. Or for things before admission. Or for things before they got their green card. Barton, this new Supreme Court decision, makes it clear that inadmissibility doesn't cut off once the alien is admitted. It's just a term of art and it continues forever. Barton was not challenging his ability to be deported. Barton was actually applying for relief. And that's a different circumstance here. The government has the burden to establish that petitioner is removable. And Barton had the burden to establish that he was eligible for discretionary relief. It says right here in Barton that Congress has employed the concept of inadmissibility as a status in a variety of statutes, similar to the cancellation of removal statute, including for lawfully admitted citizens. So even though you were lawfully admitted, you can still be inadmissible. It's just a term of art. Yes, Your Honor. And in 1160A3B2, those are the grounds of ineligibility for SAW status that includes acts making the person inadmissible, even if they're not actually subject for removal based on inadmissibility. And as stated in Madera Juarez, the exclusive procedure for removing those people is to first terminate their lawful temporary residence status under the termination procedures. So just to sum up, I think what I take your point to be is although the statute may not say it directly, you read 1160A3 and the procedures that it sets forth there to be exclusive, and you think that the SAW, that persons who have achieved this status under SAW get to be treated differently because of the claim specificity of these procedures under A3A and B. Is that basically what you're saying? A is not exclusive. This is explained in Madera Juarez. So under A, the former INS could determine that the person was deportable, and they could put him in termination proceedings. Or as explained in Madera Juarez, if the lawful temporary resident was subject to a ground of deportability, he could also be placed in deportation proceedings. In Madera Juarez, he was placed in deportation proceedings because he entered without inspection while transporting two undocumented noncitizens without inspection, and he was convicted of a federal offense for that. And the Board of Immigration Appeals found that he could be placed in deportation proceedings despite being a temporary resident. And the effect of the final order of deportation was that his temporary residency was automatically terminated. On the other hand, the board found that charges of inadmissibility had to be done under the termination proceeding as set forth in 1160A through B2. So just so, and you don't have to apologize if this is your position. I just want to understand it. Your position is that no matter what crime a SAW worker has committed, as long as he does it before he gets his LPR status, you cannot revoke his LPR status based on it, nor can you deport him on it. Is that your position? I think you have to distinguish the temporary residency from the permanent residency. That was why I asked the question as carefully as I did. Once he gets his LPR status, your view is it's home free all in effect. But are you saying that he committed the crime before the temporary residency? He committed a crime before he got temporary status. Whatever crime, we can make up the crime. Mass murder, doesn't matter. If he applies for temporary status, gets it, and the time period runs out, he is thereafter not removable. Correct? That's your view. That is our position, and I don't think that Congress You don't have to apologize for it or explain it. I just want to make sure that's your position. Yes, Your Honor. Okay. If there are no further questions, I'll submit. I was going to say the same thing. Thank you. Thank you. We thank both counsel for their arguments in this interesting case and their briefing, and we will be in recess. Case is submitted. This court for this session stands adjourned.
judges: Kleinfeld, Hurwitz, Bress